IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **KEITH LITTLE, et. al.** ) | |
| ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CV-07-BE-002-E |
| ) | |
| **JACKSONVILLE STATE UNIVERSITY,** ) | |
| **et. al.** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

The case is before the court on the "Motion to Dismiss" filed by Defendants Earl Wade and William Meehan (doc. 27); the "Motion to Dismiss" filed by Defendants Michele Champagne, Harry Holstein, and Rebecca Turner (doc. 29); and "Motion by Individual Defendants to Dismiss Count V of Plaintiffs' Second Amended Complaint" (doc. 61). For the reasons stated in this memorandum opinion, the court will GRANT the motions to dismiss filed by individually-named Defendants (docs. 27, 29, & 61).

I. PROCEDURAL SUMMARY

On May 15, 2007, the Plaintiffs submitted an amended complaint asserting claims against Jacksonville State University ("JSU") and individually-named employees of JSU. The motions addressed in this opinion do not examine the claims against JSU only (Counts I and II), but are based instead on the claims against the individually-named Defendants. Plaintiffs' original complaint and "Plaintiff's (sic) First Amended Complaint" (docs. 1 & 23) contained the

1

following counts against the individually-named Defendants:

>Count III (race and ancestry discrimination under 1981 & 1983);

>Count IV (retaliation for complaining about race and ancestry discrimination, brought under 1981 & 1983); and

>Count V (1st Amendment Retaliation under 1983).

The court held a hearing on the original motions to dismiss (docs. 27 and 29) and ruled that Plaintiffs had met the heightened pleading requirement in Counts IV and V but found that Plaintiffs had not met the heightened pleading requirement as to Count III. Therefore, the court granted Plaintiffs' motion as to Count III with leave to amend Count III only (doc. 52). The court reserved ruling on the qualified immunity issues until after Plaintiffs filed their amended complaint. On December 10, 2007, Plaintiffs filed their second amended complaint, which deleted Counts III and IV.[1] The individually-named Defendants subsequently renewed their motion to dismiss Count V (doc. 61), the only remaining count that includes claims against them.

## II.  FACTUAL BACKGROUND

Many of the facts listed below are contested, but the court accepts the allegations in the complaint as amended as true and construes them "in the light most favorable to the plaintiff" for the purposes of these motions to dismiss. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

Plaintiffs are former employees of JSU's Archeological Research Lab ("ARL"). Plaintiffs Little and Noel are Caucasian and the remaining Plaintiffs, Johnson, King, Higginbotham, Harrelson, and Dickeson, are of Native American descent. Defendant

---

[1] Plaintiffs' Second Amended Complaint also removed the claim of one Plaintiff, Hunter Johnson, in Count I, which this opinion does not address.

Champagne was a program coordinator in the College of Arts and Sciences at JSU.  She made racially discriminatory remarks concerning African Americans and/or Native Americans to or around Plaintiffs.[2]  After Plaintiffs complained to JSU officials, management, and/or supervisors about the racially discriminatory comments, Defendants retaliated against them, materially altering the terms of their employment.  With respect to Plaintiffs Little and Johnson, all Defendants removed their access to clients, research data and projects, employees they had previously supervised, and budgets.  With respect to Plaintiffs King, Higginbotham, Dickeson, Noel, and Harrelson, Defendants Champagne, Wade, and Holstein relieved them of all job duties and functions and interfered with their professional pursuits.  Defendant  Wade (JSU Dean of the College of Arts and Sciences) and JSU's attorney threatened to shut down the ARL and fire some of the Plaintiffs.  Defendants Champagne, Wade, and Holstein  (JSU Director of the ARL) also retaliated against Plaintiff Little, who requires the use of a wheelchair, by moving him to a smaller office that was not wheelchair-friendly.  Similarly, Defendants Champagne, Wade, and Holstein further retaliated against Plaintiff Johnson by moving him to a smaller office and denying him access to his lab equipment.

Plaintiffs complained to Defendant Meehan (JSU President) and Defendant Turner (JSU Vice President for Academic Affairs), who failed to conduct a proper investigation.  These

---

[2] Plaintiffs Little and Noel are apparently  Caucasian. (See ¶¶ 1 & 9 of the original Complaint (doc. 1)).  Consequently, the court would ordinarily presume that  Defendant Champagne's racially discriminatory remarks would have been directed at others.  Yet, Plaintiff Noel claims that Champagne directed racial slurs (such as "nigger knots") at him.   Other allegations in the Amended Complaint also suggest that each Plaintiff's objections may not have been limited to discriminatory remarks and actions directed solely at himself/herself.  For example, the allegations involving Plaintiff Harrelson indicate that he first objected to Champagne's acts that were directed at others, acts that he "witnessed," and retaliation followed.   In addition, the Amended Complaint alleges that Defendant Champagne subjected  Plaintiffs Johnson, King, Higginbotham, and Dickeson to discriminatory comments regarding "both Native Americans and African Americans" but the allegations do not specify whether those Plaintiffs objected only to comments/acts/retaliation directed at themselves or also objected to comments/acts/retaliation directed at others.

Defendants also misled Plaintiffs Little and Johnson about the character of the alleged investigation and refused to protect them from further discrimination. Further, they threatened Plaintiffs Harrelson, Higginbotham, Dickeson, Noel, and King with the shut down of their ARL programs. Eventually, JSU fired Plaintiffs Johnson, Higginbotham and Dickeson and constructively discharged Plaintiffs Little, King, Noel, and Harrelson.

III.  STANDARD OF LAW

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *see also* Fed. R. Civ. P. 8(a). A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969. "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements. *Id.* at 1965. As discussed below, however, in the Eleventh Circuit, these requirements increase where a plaintiff asserts a claim under 42 U.S.C. § 1983 and the defendant is entitled to assert qualified immunity.

In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). To succeed on a motion to dismiss under Rule 12(b)(6), therefore, a defendant

4

must demonstrate that the plaintiff has failed to give sufficient notice of a proper claim and the grounds upon which that claim rests.

## IV.  DISCUSSION

Because Plaintiffs' second amended complaint removed Counts III and IV, the arguments in the original motions addressing those counts are moot.  Accordingly, the only count that remains with allegations against the individual Defendants is Count V.  In Count V, Plaintiffs bring a Section 1983 claim, asserting that the individually-named Defendants, who were governmental officials acting in their individual capacities, retaliated against Plaintiffs for exercising their First Amendment rights.   The individually-named Defendants claim that Count V is due to be dismissed because they are immune from suit pursuant to the doctrine of qualified immunity.  To effectuate the purpose and underlying principles of qualified immunity, the Eleventh Circuit Court of Appeals has adopted a heightened pleading standard:

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit . . . has tightened the application of Rule 8 with respect to § 1983 claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim . . . .  Some factual detail is necessary to the adjudication of § 1983 claims.  This is particularly true in cases involving qualified immunity, where we must determine whether a Defendant's actions violated a clearly established right.

*GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir. 1998).[3]

This court previously  ruled that Count V meets the heightened pleading standard and will

---

[3]The Eleventh Circuit has not specifically addressed the issue of whether its heightened pleading standard survives in light of the recent Supreme Court decision of *Erickson v. Pardus*, 172 S. Ct. 2197 (2007), which arguably calls into question the validity of that standard but arose out of distinguishable facts and circumstances.  However, the Eleventh Circuit has applied the heightened standard since *Erickson.  See, e.g., Lawson v. Curry*, 2007 WL 2287820 (11th Cir. Aug. 10, 2007).  Therefore, this court will continue to follow Eleventh Circuit precedent.  The court notes, however, that even courts that no longer require heightened pleading frequently require additional information from plaintiffs to determine the applicability of qualified immunity.  *See, e.g., Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

now address Plaintiffs' other arguments in favor of its dismissal.

### A. Timeliness of Qualified Immunity Defense

Before the court analyzes the qualified immunity defense, it must first address Plaintiffs' argument that the motion is untimely; they assert that Defendants' latest motion to dismiss should be struck because it was filed after their answer to the second amended complaint.

Although Plaintiff correctly notes that a motion requesting dismissal pursuant to Fed. R. Civ. P. 12(b)(6) must precede an answer to the complaint (*see, e.g.*, Skrtich v. Thornton, 280 F.3d 1295, 1305-6 (11th Cir. 2002)), the court finds Plaintiffs' timeliness objection to be hyper-technical in the present circumstances. Indeed, the individual Defendants filed motions to dismiss (docs. 27 and 29) before they filed an answer (doc. 56), as the Federal Rules of Civil Procedure requires. Those motions raised the issues of pleading with specificity and the affirmative defense of qualified immunity; the court reserved ruling on the qualified immunity issues to give Plaintiffs an opportunity to replead.

The procedural confusion in this case occurred after the hearing on Defendant's original motions to dismiss. The court entered an order granting Defendants' motions to dismiss as to Count III *only* but allowing Plaintiffs leave to amend Count III only. The court expressly deferred ruling on the remaining issues raised in the motions to dismiss until Plaintiffs filed their amendment. Accordingly, the court finds that the original motions to dismiss were timely filed and deems the "Motion by Individual Defendants to Dismiss Count V of Plaintiffs' Second Amended Complaint" (doc. 61) to be a renewal of those motions as to the remaining Count V. Thus, Plaintiffs may not now claim that Defendants untimely asserted those matters.

*B.  Doctrine of Qualified Immunity*

Defendants' motions assert that the doctrine of qualified immunity requires the dismissal of Count V.  Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability of harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  Because this immunity is a protection "not only from liability but also from suit," the court appropriately addresses the issue at the motion to dismiss stage.  *Id. (*citing *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998)); *see Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

1.  Defendants' Burden: Actions Within the Scope of Discretionary Authority

To invoke qualified immunity, Defendants have the burden of showing that the actions at issue were within the scope of their discretionary authority.  *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 227, 2738, 73 L.Ed.2d 396 (1982); *Storck v. City of Coral Springs,* 354 F.3d 1307, 1314-15 (11th Cir. 2003)(defendant's burden).  At the hearing on the original motions to dismiss, Plaintiffs acknowledged that Defendants' actions were within the scope of their discretionary authority.  Accordingly, Defendants have met their burden and have invoked the potential protection of qualified immunity.

### 2. Plaintiff's Burden: Violation of Clearly Established Law

To proceed with this suit against the individual Defendants, Plaintiffs now must demonstrate that Defendants "violated clearly established law." *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000) (quoting *Gonzalez v. Lee County Hous. Auth.*, 161 F.3d 1290, 1294-95 (11th Cir. 1998)). Plaintiffs identify three First Amendment rights that were "violated": (1) freedom of speech; (2) the right to petition government agencies for the redress of First Amendment grievances; and (3) freedom of association. Because courts have used the same initial analysis for freedom of speech and the right to petition, the court will analyze these two rights in tandem. *See Hoffmann v. Mayor of Liberty*, 905 F.2d 229, 233 (8th Cir. 1990); *see also Grigley v. City of Atlanta*, 136 F.3d 752, 755 (11th Cir. 1998) (holding that a public employee's claim of retaliation in violation of the right to petition is subject to the same public concern requirement as a claim of retaliation in violation of the right to free speech).

#### a. Freedom of Speech/Right to Petition

A state or state employee may not discharge, demote, or otherwise retaliate against a public employee for engaging in *protected speech*. *See Morgan v. Ford*, 6 F.3d 750, 753-54 (11th Cir. 1993). The Eleventh Circuit has explained its process of evaluating First Amendment retaliation claims as follows:

> This circuit has developed a four-part test to determine whether an employee suffered such retaliation. First, a court must determine whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern. If so, the district court must weigh the employee's first amendment interests against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. Should the employee prevail on the balancing test, the fact-finder determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee. Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, the state must

> prove by a preponderance of the evidence that it would have reached the same
> decision even in the absence of the protected conduct.

*Watkins v. Bowden*, 105 F.3d 1344, 1352-53 (11th Cir. 1997).

### (1) No Constitutional Violation: Public versus Private Speech

Step one of this balancing test requires that courts focus on whether the speech at issue is one of public concern, which is generally protected speech, or of personal concern, which is generally not protected. *See Badia v. City of Miami*, 133 F.3d 1443, 1445 (11th Cir. 1998). The court must analyze the "content, form, and context" of a plaintiff's speech to determine its nature. *Connick v. Myers*, 461 U.S. 138, 147 (1983) "For an employee's speech to rise to the level of public concern, it must relate to a matter of political, social, or other concern to the community." *Watkins*, 105 F.3d at 1353. "Absent extraordinary circumstances, however, First Amendment protection remains unavailable when 'a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest . . . .'" *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (quoting *Connick*, 461 U.S. at 147). In addition to considering the content, form, and context of speech, the court will also consider "the employee's attempts to make the concerns public, and the employee's motivation in speaking." *Watkins,* 105 F.3d at 1353. The Eleventh Circuit has recognized that "[a]n employee's speech will rarely be entirely private or entirely public" and accordingly, courts must determine whether the "main thrust" of the employees' speech was private or public. *Morgan*, 6 F.3d at 755

The court will turn to the facts alleged in the second amended complaint to determine the public-versus-private nature of the employees' speech. That pleading states that Plaintiffs complained to JSU supervisors, JSU management, and/or JSU officials about Defendant Champagne's racially discriminatory comments and about JSU's racially discriminatory

environment/racially hostile work environment/retaliatory actions.  Although Plaintiffs' complaint, as twice amended and once corrected, is not a model of specificity, it does make the somewhat conclusory assertion that Plaintiffs "*publicly* and privately [opposed] acts of discrimination and retaliation and other matters of *public concern*."  (Pl's 2nd Am. Compl. ¶ 144) (emphasis added).  However, the court must look beyond Plaintiffs' conclusions to determine whether Plaintiffs' characterization of the speech coincides with that of the Eleventh Circuit.

Plaintiffs' allegations indicate that their speech concerned their JSU workplace: objections to their supervisor's racially discriminatory comments at the workplace and objections to retaliation that occurred at the workplace as a result of their previous speech.  All of the Plaintiffs worked in the same lab and complained about the words and actions of the same supervisor.  Their speech was directed to JSU supervisors, JSU management, and JSU officials; the amended complaint does not indicate that any of the Plaintiffs complained to the press or anyone outside the JSU managerial framework.  Some of the speech, however, was not limited to each Plaintiff employee's personal situation but, instead, represented objections to racially discriminatory comments and retaliation directed at other lab employees.

Given those facts, this court turns to Eleventh Circuit cases for guidance on whether the "main thrust" of Plaintiffs' speech was public or private.  In many respects, the speech in the instant case is analogous to that in *Maggio v. Sipple*, 211 F.3d 1346 (11th Cir. 2000) and *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993).  In *Morgan*, one of the plaintiff's co-workers complained about her supervisor's sexual harassment and named plaintiff as a corroborating witness.  The plaintiff met with the department superintendent, objected to her supervisor's behavior, and subsequently filed her own sexual harassment charges against that supervisor.  *Morgan*, 6 F.3d at

752-53.  After retaliation occurred, the plaintiff filed a § 1983 suit alleging retaliation for exercising her First Amendment right to free speech.  *Id.* at 753.  The Eleventh Circuit acknowledged that the plaintiff's "speech about the harassment of her co-worker contain[ed] a public speech aspect" but found that "the main thrust of [plaintiff's] speech took the form of a private employee grievance." *Id.* at 755.  In analyzing the form, context, and content of the plaintiff's speech, the Court of Appeals noted that the speech "largely focused on her supervisor's behavior and its effect on her work, took the form of complaints to official bodies, did not in any way draw 'the public at large or its concerns into the picture,' and 'was driven by her own entirely rational self-interest in improving the conditions of her employment.'" *Maggio*, 211 F.3d at 1352 (explaining and quoting *Morgan*, 6 F.3d at 755).  Therefore, the Court of Appeals affirmed the grant of summary judgment in favor of the defendants on the § 1983 claim, concluding that the speech was not primarily public speech and, thus, was not entitled to First Amendment protection.

  Similarly, in *Maggio*, the plaintiff, an employee of the State Department of Labor and Employment Security, testified on behalf of her supervisor at a department grievance hearing and later claimed that the defendants retaliated against her for testifying and exercising her First Amendment rights.  211 F.3d at 1349.  Plaintiff argued that her testimony involved a matter of public and not private concern because the speech triggering the retaliation did not concern her personally; she testified about her supervisor's grievances and fair implementation of personnel policies.  *Id.*  The Eleventh Circuit examined the context of the plaintiff's speech and observed that the grievance proceedings were apparently not open to the public and plaintiff communicated her concerns to the administrative bodies related to her job, and not to the public.

*Id.* at 1353. With respect to the speech content, the Eleventh Circuit found that the plaintiff's primary purpose was to support her supervisor's private grievance and perhaps, as a bonus, gain the supervisor's favor. *Id.* "Moreover, as in *Morgan*, the fact that Maggio was testifying in another employee's grievance proceedings, rather than her own grievance, does not automatically establish that Maggio's speech involved a matter of public concern." *Id.* The Court of Appeals reversed the district court's order denying qualified immunity to the individual defendants, finding that Maggio had not alleged speech of public concern and, thus, had not alleged a First Amendment violation.

In support of their argument that their speech was protected public speech, Plaintiffs rely instead on the case of *Walker v. Schwalbe*, 112 F.3d 1127 (11th Cir. 1997). The plaintiff in *Walker* was a whistle-blower to state legislators; he was an employee of a state agency for the developmentally disabled who uncovered budget improprieties and who alleged that he was demoted in retaliation for his speech. *Id.* at 1129. One example of the improprieties was the use of public fund-raising money for agency committee weekend social activities instead of for programs to help the disabled members of the community. *Id.* In affirming the district court's determination that the plaintiff's speech was protected, the Eleventh Circuit focused on the layers of public interest involved in the speech: the plaintiff did not restrict his complaints to agency administration but spoke to elected public officials about the agency's improper use of public funds. *Id.* at 1131. Noting that a "core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption," the Court of Appeals found plaintiff's speech to be on a matter of public concern and protected by the First Amendment. *Id.* (quoting *Bryson v. City of Waycross*, 888 F.2d 1562, 1566 (11th Cir. 1989)).

The court finds that Plaintiffs' speech is analogous to the speech in *Maggio* and *Morgan* but not to the speech in *Walker*. Like the speech in *Morgan* and *Maggio*, the speech in the instant case involves a workplace context with Plaintiffs objecting to the way Defendants treated them and/or their co-employees at the workplace. As in *Morgan* and *Maggio*, Plaintiffs apparently communicated their grievances through the administrative framework of the employer rather than focusing their communication primarily on the public at large or complaining – as did the plaintiff in *Walker* – to elected public officials. And, as the Eleventh Circuit acknowledged in both *Maggio* and *Morgan*, Plaintiffs' objecting to discriminatory words and actions directed at co-workers does not automatically change the nature of speech into a public concern and transform it into First Amendment activity. Instead, the Plaintiffs' speech dealt with workplace issues and grievances that fall more on the side of private rather than public speech. Because Plaintiffs have not demonstrated that their speech was a matter of public concern, the court need not reach the next step of its four-part analysis of First Amendment retaliation claims. Plaintiffs have not alleged a First Amendment violation.

(2) No Notice that Actions Violated Clearly-Established Law

Even assuming *arguendo* that Plaintiffs had alleged a First Amendment violation of protected speech, the court would nevertheless find that the individual Defendants were entitled to qualified immunity. To overcome qualified immunity, Plaintiffs need not only allege a violation of Constitutional or statutory law; they must also demonstrate that the law in question was clearly-established. In other words, "a plaintiff must show that a reasonable person in the defendant's position would have been on notice that his actions violated clearly-established law." *Maggio*, 211 F.3d at 1354. Because of the "intensely fact specific" nature of the legal

13

determination, the Supreme Court's standard calls for a balancing of interests and facts instead of a "bright line standard." *Dartland v. Metro. Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989). In light of the "case-by-case approach" required for a First Amendment analysis, the Eleventh Circuit has recognized that "[t]here will rarely be a basis for [an] *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." *Id.* (quoting *Noyola v. Tex. Dep't of Human Res.*, 846 F.2d 1021, 1025 (5th Cir. 1988)); *see Maggio*, 211 F.3d at 1354 (stating that a defendant in a First Amendment suit "will only rarely be on notice that his actions are unlawful"). Accordingly, courts uphold qualified immunity protection except in narrow circumstances. One such circumstance would be when controlling case law finds that speech materially similar to a plaintiff's speech was protected speech. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), *as modified*, 14 F.3d 583 (11th Cir. 1994). Another circumstance would be where, "based on the facts of the case, no reasonable person could believe [that the speech was not entitled to First Amendment protection]." *See Martin v. Baugh*, 141 F.3d 1417, 1420 (11th Cir. 1998).

This case is not the rare one when Plaintiffs are able to demonstrate that Defendants have violated clearly established law in a First Amendment context. Plaintiffs have provided no case law holding that speech materially similar to that uttered by the Plaintiffs is protected as a matter of law. In fact, the most analogous Eleventh Circuit cases of <u>Maggio</u> and <u>Morgan</u> support the opposite conclusion: that Plaintiffs' speech involved workplace grievances and not protected speech. Plaintiffs failed to show that, based on the facts pleaded, no reasonable person would have believed that their speech was not protected by the First Amendment. Accordingly, Plaintiffs have not overcome qualified immunity on the free speech/right to petition claims and

14

the court holds that the individually-named Defendants are entitled to qualified immunity from suit on those First Amendment claims.

### b. Freedom of Association

The remaining alleged First Amendment violation involves Plaintiffs' right to freedom of association. Courts grant special protection under the First Amendment to two forms of associations: "intimate associations" and "expressive associations." *See Cummings v. DeKalb County*, 24 F.3d 1349, 1354 (11th Cir. 1994). Therefore, to succeed under this First Amendment theory, Plaintiffs must demonstrate that their right of association fits the description of one of these two protected associations. If their group "closely resembles a family relationship," *see McCabe v. Sherrett*, 12 F.3d 1558, 1563 (11th Cir. 1994), they may assert the right of intimate association, which "encompasses the personal relationships that attend the creation and sustenance of a family-marriage, child-birth, the raising and education of children, and co-habitation with one's relatives." *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984). Or, they may demonstrate that their association is one whose purpose "is to engage in activities independently protected by the First Amendment." *McCabe*, 12 F.3d at 1563.

In the instant case, Plaintiffs have not alleged in their amended complaint any special association among themselves that would entitle them to special Constitutional protection. Accordingly, Plaintiffs have not demonstrated that Defendants violated any "clearly established statutory or constitutional rights of which a reasonable person would have known." *See Hope*, 536 U.S. at 739. The court finds that the individually-named Defendants are entitled to qualified immunity on the First Amendment "freedom of association" claim.

V.  CONCLUSION

In summary, the court finds that Plaintiffs failed to demonstrate that the individually-named Defendants violated clearly-established rights under theories of freedom of speech, freedom to petition the government, or freedom of association.  Therefore, the individual Defendants are entitled to qualified immunity from suit and this court will GRANT their motions to dismiss Count V of the amended complaint.

The court will enter a separate Order in accordance with this opinion.

Dated this 31st day of March, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE